FILED
CLERK

3/6/2020 4:44 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DONNA A. STURM, individually and on behalf of
all others similarly situated,

                                         **MEMORANDUM & ORDER**
                 Plaintiff,                    19-cv-0556 (SJF) (AYS)

        -against-

ALPHA RECOVERY CORP. and OLIPHANT
FINANCIAL, LLC,

                       Defendants.
----------------------------------------------------------------X
FEUERSTEIN, District Judge:

      Plaintiff Donna A. Sturm ("Plaintiff") commenced this putative class action against Alpha Recovery Corp. ("Alpha") and Oliphant Financial, LLC ("Oliphant") (collectively "Defendants") alleging that Defendants have used unlawful collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.* Currently before the Court is Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Motion, Docket Entry ("DE") [25]. Plaintiff has opposed the motion. For the reasons set forth herein, the motion is granted in part and denied in part.

**I. BACKGROUND**

**A. Factual Allegations**

      The following facts are taken from the complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion. In addition, the complaint incorporates by reference and attaches the letter sent by Alpha which forms the basis of Plaintiff's complaint. Compl, Ex. 1 (the "Letter").

      Plaintiff is an individual who is a citizen of New York. Compl. ¶¶ 5. Alpha is a Colorado corporation with its principal place of business in Colorado, *id.* ¶ 7, and Oliphant is a

Florida limited liability company with its principal place of business in Florida. *Id.* ¶ 8. Defendants are "debt collectors" as defined by the FDCPA. *Id.* ¶10

Plaintiff is alleged to owe a debt for which she fell behind on the payments. Compl. ¶¶ 11, 13. The debt was assigned or otherwise transferred to Alpha "at an exact time known only to Defendants." *Id.* ¶ 14. In their efforts to collect the debt, Alpha sent Plaintiff the Letter, dated October 13, 2018, which Plaintiff claims is the initial communication received from Defendants. *Id.* ¶¶15-16, Ex. 1.

Next to the sender's address at top of the Letter, a box containing the following information is displayed:

> 10/13/2018
>
> **Creditor:** Oliphant Financial Group, LLC
> **Account Number**: ----3453
>
> **Original Creditor:** EVINE, Inc.
> **Original Creditor Account Number:** ***6916
>
> **Debt Due as of Charge-Off:** $94.53
> **Interest Accrued since Charge-Off:** $0.00
> **Non-Interest Charges or Fees Accrued since Charge-Off:** $0.00
> **Payments Made on Debt since Charge-Off:** $0.00
> **Balance Due:** $94.53

Letter (emphasis in original). The body of the Letter consists of two paragraphs. After those paragraphs and the "signature line" of "Alpha Recovery Corp.," the following sentence appears, centered and by itself: "[y]our account with the above referenced original creditor has been purchased and is now owned by our client, Oliphant Financial Group, LLC." *Id.*

The body of the letter contains the validation notice as required by the FDCPA:

> Unless you notify this office within 30 days after receiving this
> notice that you dispute the validity of this debt or any portion

2

> thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of original creditor, if different from the current creditor.

(the "validation notice"), Letter; *see also* 15 U.S.C. § 1692g(a).   The notice comprises the second paragraph of the Letter and is in the same font and typeface size as the rest of the body of the Letter.  With the exception of the bold-faced titles used in the boxed information, the font and typeface of all the print on the front of the letter appears to be identical.

The bottom of the front page of the Letter directs the reader to "***See reverse side for state specific laws and other important information***."  Letter.   The reverse side states that "[w]e are required under state law to notify consumers of the following rights.  This list does not contain a complete list of the rights consumers have under state and federal laws."  *Id.*  The text proceeds to give notice of the recipient's rights under the laws of various states.  It also restates rights under the FDCPA regarding the use by debt collectors of threats of violence or arrest or of obscene language.

**B.  Procedural History**

Plaintiff commenced the instant action on January 29, 2019, alleging two causes of action pursuant to the FDCPA on behalf of Plaintiff and others similarly situated.  The first count alleges a violation of § 1692g in that the validation notice contained in the Letter is not conveyed clearly and is overshadowed or contradicted by other language.  The complaint alleges, *inter alia,* that the validation notice is "visually inconspicuous," Compl. ¶ 35, and that the Letter is structured to make the validation notice difficult to read and easy to overlook, appear as "boilerplate language," and appear unimportant.  *Id.* ¶¶43-45.  The second count alleges that the

Letter violates §1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Plaintiff claims that the Letter violates this section since she does not owe money to, never contracted with, never incurred a debt to, and does not have an account with Oliphant. Compl. ¶¶ 50-54.

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1]  Plaintiff opposes the motion in its entirety.

## II.  LEGAL STANDARDS

### A.  Motion for Judgment on the Pleadings

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P.  12(c).  In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).  Therefore, to survive a motion pursuant to Rule 12(c), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Matson v. Bd. of Educ. of the City*

---

[1] In her Reply Memorandum, Plaintiff requests that her motion be converted to a motion for summary judgment.  As Defendants were given neither notice of this request nor an opportunity to oppose it, it is denied.  As such, the Court has not considered exhibits included with Plaintiff's reply in determination of the motion for judgment on the pleadings.

4

*Sch. Dist. of N.Y.,* 631 F.3d 57, 63 (2d Cir. 2011). Although factual allegations are assumed to be true, this principle is "inapplicable to legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

In deciding a motion for judgment on the pleadings, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation omitted). "'A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" *Id.* (quoting *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004)).

**B. FDCPA**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). Its legislative history "explains that the need for the FDCPA arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S.Rep. No. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)). "Because the FDCPA is remedial in nature, its

terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (internal quotations marks and citation omitted).

It is well-settled that courts in this Circuit analyze whether a collection notice complies with the FDCPA by viewing it from the perspective of the least sophisticated consumer. *See Kolbasyuk v. Capital Mgmt. Servs., LP,* 918 F.3d 236, 239 (2d Cir. 2019). This standard is "an objective analysis that seeks to protect the naïve from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco v. Trauner, Cohen & Thomas, L.L.P*., 412 F.3d 360, 363 (2d Cir. 2005) (internal quotation marks and citation omitted). Even though the least sophisticated consumer may lack "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday common consumer," *Kolbasyuk,* 918 F.3d at 239 (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996)), courts presume that she possesses "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk,* 918 F.3d at 239 (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993)); *see also Dewees v. Legal Servicing, LLC,* 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (applying this standard, courts analyze collection letters "from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences" (internal quotation marks and citation omitted)).

Under the least sophisticated consumer standard, "a collection notice may violate the FDCPA when it is sufficiently ambiguous to give rise to a reasonable, but inaccurate, interpretation." *Kolbasyuk,* 918 F.3d at 239 (quoting *Clomon,* 988 F.2d at 1319). Ultimately, "the central inquiry is whether a consumer, after reading a collection letter in its entirety, is left

6

'uncertain as to her rights'" *Allen v. Advanced Call Ctr. Techs., L.L.C.*, No. 18CV2873, 2019 WL 4887683, at *4 (E.D.N.Y. Sept. 30, 2019) (quoting *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)); *see also Weiss v. Zwicker & Assocs., P.C.,* 664 F. Supp. 2d 214, 216 (E.D.N.Y. 2009) (a determination of whether a communication violates the FDCPA depends upon "whether the notice fails to convey the required information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message" (internal quotation marks and citation omitted)).

1. Section 1692g

Section 1692g requires a debt collector to convey certain information to a debtor when attempting to collect a debt. *See* 15 U.S.C. § 1692g. The validation notice is required "to protect consumers from 'debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid' by 'inform[ing consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of the debt.'" *Park v. Forster & Garbus, LLP,* No. 19-cv-3621, 2019 WL 5895703, at *2 (E.D.N.Y. Nov. 12, 2019) (internal quotation marks and citation omitted; alteration in original). The validation notice must include specific information including, *inter alia,* the amount of the debt, the name of the creditor to whom the debt is owed, and statements advising the consumer of his or her rights regarding how to dispute the debt or to obtain verification of the debt. 15 U.S.C. § 1692g.

Not only must the debt collector communicate the required information to the debtor, it must also convey it clearly. *See Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008). A validation is legally insufficient "if that notice is overshadowed or contradicted by other language in communications to the debtor." *Id.* (internal quotation marks and citation

7

omitted); *see also* 15 U.S.C. § 1692g(b) ("Any collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispose the debt or request the name and address of the original creditor"). "A notice overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'" *Jacobson,* 516 F.3d at 90 (quoting *Russell,* 74 F.3d at 35); *see also Vetrano v. CBE Grp., Inc.,* No. CV 15-3185, 2016 WL 4083384, at *5 (E.D.N.Y. Apr. 11, 2016) (noting that "[e]ven if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty").

 2, Section 1692e

 Section 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It contains a list of non-exhaustive prohibited conduct including, *inter alia,* (1) "the false representation of the character, amount, or legal status of any debt," *id.* § 1692e(2)(A); and (2) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt.. . ." *Id.* § 1692e(10). This section "mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP,* 875 F.3d 128, 136 (2d Cir. 2017).

### III. DISCUSSION

### A. Section 1692g

 Plaintiff does not challenge the sufficiency of the validation notice but rather claims it was overshadowed by other parts of the Letter. Although not apparent from the Complaint, Plaintiff in opposition to the motion identifies the violation of § 1692g as "the Letter's direction

to Plaintiff to 'see reverse for important information'—where the validation language was not—[which] operates to divert Plaintiff's attention from her most important rights—that being her right to dispute the debt." Plaintiff's Memorandum of Law in Opposition at 10. She argues that this instruction overshadows the validation notice appearing on the front side of the Letter.

As to the placement of the validation notice, claiming that use of the language within the body of the letter is "visually inconspicuous" is tantamount to accusing Defendants of hiding it in plain sight. Plaintiff has cited no case law to support the proposition that, as a matter of law, providing the validation notice prominently within the body of the collection letter fails to adequately inform a debtor of her rights. Although it is conceivable that a debt collector could provide a notice of such length and complexity that it could impermissibly obscure the notice, that is certainly not the case here where the entire letter consists of two paragraphs. As even the least sophisticated consumer possesses the "willingness to read a collection notice with some care," *Clomon*, 988 F.2d at 1319, a consumer may be presumed to have read the body of this short letter.

Plaintiff's contention that the validation notice is overshadowed by other portions of the Letter is also without merit. The only bold-faced type is used in the box at the top of the Letter and consists only of factual information that in no way impacts the debtor's validation rights. The direction to "[s]ee reverse side for state specific laws and other important information" is set off by asterisks, but uses the same non-bold typeface used throughout the letter. More importantly, the information set forth on the reverse, as suggested by the direction, pertains to specific notifications required by several states. To the extent the reverse side information addresses federal rights, it only reiterates the prohibition on a debt collector's harassing behavior including the use of threats of violence or arrest, or the use of obscene language. There is simply

9

no language on the reverse side that pertains to a debtor's rights as set forth in the § 1692g notice, and thus no basis for a reasonable consumer to be uncertain of her rights as set forth in the body of the Letter. The Court finds no inconsistency or overshadowing impacting the Letter's clear validation notice. *Cf. Savino,* 164 F.3d at 85 (finding valid claim where there was an inconsistency between validation notice and language demanding immediate payment).

Finally, the Court has reviewed the cases cited by Plaintiff and finds them to be either lacking in relevance or unpersuasive. *See, e.g., McStay v. I.C. Sys. Inc.,* 308 F.3d 188, 191 (2d Cir. 2002) (where issue was whether compliant validation notice on the reverse side was sufficient to overcome ambiguous language on the front of the letter, the court concluded that "any confusion created by the ambiguity on the front of the letter dissipates when read in conjunction with the language on the back"); *Papetti v. Rawlings Fin. Servs., LLC,* 121 F. Supp. 3d 340, 349 (S.D.N.Y. 2015) (finding that complaint raised § 1692g claim where letter included errant misdirection to "**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**" where reverse side was blank and validation notice was instead included on separate page not attached or affixed to the main document).

## B. Section 1692e

Plaintiff alleges that the Letter's statement that she owed money to Oliphant was a false representation of the character, amount, or legal status of any debt in violation of § 1692e(2)(A), and that the Letter's request for payment of a debt she did not owe constituted a false representation or deceptive means to collect or attempt to collect any debt in violation of § 1692e(10). Defendants argue that there is no false representation in the Letter since it expressly advises that Oliphant purchased the debt from Evine and is thus the current creditor.

10

Plaintiff's claim is based upon whether the Letter falsely identifies Oliphant as the current creditor and owner of the debt. The Letter clearly identifies Evine as the original creditor, and Plaintiff does not argue that she is unfamiliar with Evine or deny that she may have incurred debt with that entity. It is also clear from the Letter that Oliphant is holding itself out as the current creditor, having purchased the debt from Evine, and that according to Alpha, Plaintiff now owes the debt to Oliphant. If Oliphant is not, in fact, the proper assignee of Plaintiff's debt, then the Letter would include a false representation regarding the legal status of the debt. In other words, the Letter is only false or misleading if Oliphant was <u>not</u> the current owner of the debt when the Letter was sent.

Utilizing the validation procedures set forth in § 1692g may have resolved this issue short of the time and expense of litigation. Be that as it may, Plaintiff's failure to avail herself of those procedures is not a bar to suit as "the FDCPA's text does not make consumer exhaustion of § 1692g dispute procedures a condition precedent to a consumer § 1692e . . . claim." *Vangorden v. Second Round, L.P.,* 897 F.3d 433, 441 (2d Cir. 2018). Assuming the allegations of the complaint to be true, Plaintiff has stated a claim under § 1692e and accordingly the motion to dismiss this claim is denied.[2]

## IV. CONCLUSION

For all the foregoing reasons, Defendants' motion for judgment on the pleadings, DE [25], is (1) granted as to Plaintiff's first claim pursuant to 15 U.S.C. § 1692g; and (2) denied as to Plaintiff's second claim pursuant to 15 U.S.C. §1692e. The status conference scheduled for

---

[2] In their reply papers, Defendants have attached a Declaration from Oliphant's Chief Executive Officer attesting to the purchase of debt, including Plaintiff's, from Evine, and attaching supporting documentation. As discussed *supra,* the Court declined to convert this motion to one for summary judgment and thus did not consider the Declaration and exhibits provided by Defendants. Plaintiff is directed to review those materials and be prepared to discuss how she plans to proceed on this claim in light of those materials at the next conference.

11

April 22, 2020 is **advanced to March 30, 2020 at 11:15 a.m**. in courtroom 1010 of the Central Islip courthouse.

**SO ORDERED**.

                                                    /s/ *Sandra J. Feuerstein*
                                                    Sandra J. Feuerstein
                                                    United States District Judge

Dated: Central Islip, New York
           March 6, 2020